UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALICE A. HOFF,<br><br>       Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social<br>Security,<br><br>       Defendant. | No. CV-06-3046-CI<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND REMANDING |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 17, 21.) Attorney D. James Tree represents Plaintiff; Assistant United States Attorney Pamela J. DeRusha and Special Assistant United States Attorney David R. Johnson represent Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's

---

[1] As of February 12, 2007, Michael J. Astrue became Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25(d)(1), Commissioner Michael J. Astrue should be substituted as Defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. 405 (g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 1

Motion for Summary Judgment, and remands the matter to the Commissioner for additional proceedings.

## JURISDICTION

On March 4, 2003, Plaintiff Alice Hoff (Plaintiff) protectively filed for disability insurance benefits and social security income benefits. (Tr. 82-85, 199-202.) She alleged disability due to a history of foot surgery (bunionectomy) and foot pain, with an onset date of October 24, 2002. (Tr. 93, 203.) Benefits were denied initially and on reconsideration. (Tr. 36, 42.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Richard Hines on April 14, 2005. (Tr. 211-31.) A supplemental hearing was held on October 5, 2005. (Tr. 232-59.) Plaintiff, who was represented by counsel, testified. Medical expert George Weilepp, M.D., and vocational expert Jill Dempsey also testified. The ALJ denied benefits and the Appeals Council denied review. (Tr. 6.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. Plaintiff was born June 26, 1956, and was 49 years old at the time of the hearing. (Tr. 83, 253.) She had a ninth-grade education and past work experience as a sales clerk and cashier. (Tr. 99, 102. 235.) She reported she had tried to obtain a high-school equivalency degree (GED) three times, but could not pass the test. (Tr. 235.) She stated she was told she read at a third-grade level and could not qualify for a GED. (Tr. 245-46.) She testified she was separated

from her spouse and lived with her mother and fifteen-year-old son in a three-bedroom trailer. (Tr. 235.)  At the time of the hearing, she was providing in-home care for her mother, which included cooking, cleaning, shopping and paying the bills. (Tr. 240.)  She testified her condition had worsened due to foot and joint pain, swollen feet and hands.  (Tr. 249-52.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Hines found Plaintiff's work as an in-home care provider for her mother did not qualify as substantial gainful activity. (Tr. 20.)  At step two, he found Plaintiff had severe impairments from multiple foot surgeries, Raynaud's phenomenon and osteoarthritis of the knees, which alone or in combination, did not meet or medically equal any of the administratively recognized level impairments listed in Appendix I, Subpart P, Regulations No. 4 (Listings).  (Tr. 18.)  At step four, he found Plaintiff could perform a "wide range of light and sedentary work."  (Tr. 19.) Specifically he found:

> [She] would be unable to perform work that would involve lifting or carrying more than occasional lifting or carrying of 20 or frequent lifting or carrying of more than 10 pounds; standing and/or walking for more than a total of 2 hours in an 8-hour work day; sitting for more than a total of 6 hours in an 8-hour work day; sitting for more than a total of 6 hours in an 8-hour workday.

(Tr. 19, 23.)  In the body of his decision, the ALJ adopted the residual functional capacity assessment (RFC) by Morris Fuller, M.D., that specified the following non-exertional restrictions: occasional climbing, balancing, stooping, kneeling, crouching crawling; and avoid "concentrated exposure to hazards (machinery, heights, etc.)."  (Tr. 20, 163-70.)  ALJ Hines found Plaintiff's

allegations not credible to the extent they would preclude this range of work. (Tr. 20, 22.) The ALJ determined Plaintiff was not capable of performing her past relevant work as a cashier. (Tr. 20.) At step five, he found transferability of skills was not an issue, and Plaintiff could perform a significant number of jobs in the national economy. Therefore, she was not found to be under a disability as defined by the Social Security Act. (Tr. 23.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42

U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a

finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he (1) failed to meet his burden at step five, and (2) failed to fully and fairly develop the record. (Ct. Rec. 18 at 6.) She also contends the ALJ failed to give "clear and convincing" reasons for rejecting her testimony. (Id. at 10.)

**DISCUSSION**

**A.   Credibility**

In the absence of affirmative evidence of malingering, an ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. The ALJ's reasons must be "clear and convincing." *Morgan*, 169 F.3d at 599. Furthermore, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted). The following factors may be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). If a claimant produces objective medical evidence of an underlying impairment that could

reasonably cause pain, an adjudicator may not reject a claimant's allegations based solely on a lack of objective medical evidence to "fully corroborate the alleged severity." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)(citation omitted). The ALJ need not completely reject nor completely accept the claimant's allegations. *SSR* 96-7p. When a claimant can spend a substantial part of his day engaged in the performance of physical activity which is transferable to a work setting, such a finding is sufficient to discredit allegations of disability. *See Morgan,* 169 F.3d at 599-600. However, the Social Security Act does not require a claimant to be totally incapacitated to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Credibility determinations are the sole province of the ALJ. Where he has made specific findings justifying his credibility determination, and they are supported by substantial evidence, the reviewing court will not second-guess his decision. *Id*. at 604.

Here, the ALJ found Plaintiff's allegations of pain and functional limitations were not totally credible "to the extent that they would preclude a wide range of light and sedentary work." (Tr. 20.) Specifically, he rejected her testimony of limited activities of daily living, that the condition of her feet had worsened, that she had to elevate her legs 4-5 times a day, and that she had constant back and foot pain. (Tr. 20.) Plaintiff argues the credibility findings were erroneously based on the fact that she provided in-home care for her elderly mother, with whom she lived. (Tr. 20; Ct. Rec. 18 at 10.) However, the ALJ's findings were more extensive than that. He gave the following specific reasons for

discounting Plaintiff's pain and limitations testimony, which are supported by the record: her testimony was inconsistent with her statement to her doctor in July 2003, that her pain was occasional and bothered her when she stood too long or crocheted too long (Tr. 178); in September 2003, she reported her pain was eased with non-prescription ibuprofen (Tr. 172); she has never required significant pain relief treatment, or reported significant intervention due to her impairments, such as repeated emergency room visits, office visits or hospitalization (Tr. 172, 177, 187);[2] and she was a paid in-home care provider to her mother. (Tr. 119, 178.) He also correctly found that no physician in the record opined that Plaintiff was disabled. (Tr. 20.) These are specific, cogent reasons supported by the record to discount the degree of limitations alleged by Plaintiff. Although, as Plaintiff argues, her ability to perform household chores is not, alone, a legitimate reason to reject her allegations, *see e.g., Fair*, 885 F.2d at 603, the ALJ provided other "clear and convincing" reasons to justify his rejection of her severity allegations. Credibility findings are the sole responsibility of the ALJ. ALJ Hines' credibility findings are supported by substantial evidence and the court will not second-guess his determination.

---

[2] Physical therapy treatment was initiated on September 23, 2003, for shoulder pain. Progress notes document "no pain" by October 20, 2003. (Tr. 174-75.) An ER report indicates Plaintiff was treated July 7, 2001, for a fall on her knee. (Tr. 192.) Plaintiff's shoulder impairment was found non-severe. (Tr. 18.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 8

**B.   Vocational Expert Testimony**

At step four, the ALJ made the following RFC finding: "The claimant has the residual functional capacity to perform a significant range of light and sedentary work." (Tr. 23.) He also adopted Dr. Fuller's RFC findings which included postural and environmental limitations, and a two-hour limit for standing and walking. (Tr. 19-20.) Based on the VE's testimony, he concluded Plaintiff could perform a significant number of jobs in the national economy, including "an order clerk, as an assembler, as an information clerk and as a dowel inspector." (Tr. 23.)

At the hearing, VE Dempsey identified Plaintiff's past work as salesclerk and limited care provider, both of which were classified light level, semi-skilled with a specific vocational preparation level (SVP) three. (Tr. 254.) The ALJ presented the following hypothetical to the VE: an individual of Plaintiff's age, education (ninth grade) and work experience, capable of unskilled work,[3] who could "occasionally lift 20 pounds, frequently 10, stand or walk up to two hours in an eight-hour workday, sit six hours in an eight-hour workday and occasionally all of the postural climbing, balancing, stooping, kneeling, crouching and crawling, and . . . no

---

[3] Unskilled work corresponds to an specific vocational preparation level (SVP) of 1-2. *SSR* 00-4p. SVP-2 work is defined as work that can be learned in 30 days or less. *Id*. Unskilled work involves working with things (placing or removing materials from machines that are automatic or operated by others), machine tending, and duties that require little vocational preparation and judgment. 20 C.F.R. § 404.1568 (a).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 9

hazards machinery or heights, also avoidance of temperature extremes." (Tr. 254-55.) When the ALJ asked, "[w]ould that person be able to do prior relevant work?," the VE stated the hypothetical individual could not perform the prior work identified because of the "unskilled work" requirement. (Id.)

The ALJ then described a second hypothetical individual who could perform the "full range of sedentary work,"[4] as opposed to the "less than light" range propounded first, and asked if that person would be able to do "prior relevant work." (Tr. 255.) The VE answered no, because Plaintiff's prior jobs were classified as "light." (Id.) The ALJ then asked "[w]ould there be work the person could be [sic] perform?" The VE testified:

> Yes. There would be some work. There'd be things, like, order clerk. This is sedentary and unskilled, approximately 141,000 positions in the national economy and about 2,700 positions in Washington State. There'd be work such as unskilled assembly job, like, final assembler. There is approximately 104,000 positions in the national economy and about 1,400 positions in Washington State. There'd be some, like, information clerk. This is sedentary and unskilled. There's approximately 15,000 positions in the national economy and about 325 in Washington State. There would be production inspection jobs such as [INAUDIBLE] inspector, sedentary unskilled. There's approximately 14,000 positions in the national economy and about 230 in Washington.

(Tr. 255.)

It appears from this testimony that the VE was responding to the second hypothetical describing an individual who could perform

---

[4] Sedentary work involves lifting no more than ten pounds at a time. It requires an ability to sit for six of an eight-hour day and to walk and stand not more than two hours in an eight-hour day. *SSR* 83-10.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 10

a full range of sedentary, unskilled work. (Tr. 255.) Thus, the VE only opined Plaintiff could perform these sedentary jobs. *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir. 1995). The record does not contain evidence that there are a significant number of "less than light" jobs in the national economy that Plaintiff can perform.

Plaintiff contends, however, that even these VE opinions have no evidentiary value because the jobs identified are not consistent with the ALJ's hypothetical. (Ct. Rec. 18 at 13.) Defendant responds there are several jobs within the categories identified that are sedentary, unskilled. (Ct. Rec. 22 at 15-16.) Plaintiff and Defendant have submitted numerous titles and descriptions from the DICTIONARY OF OCCUPATIONAL TITLES (DICOT) to support their arguments regarding the competency of the VE testimony. (Ct. Rec. 18 at 12; Ct. Rec. 22 at 15-17.) An independent review of the DICOT indicates there are at least five order clerk jobs, seven assembler jobs, five information clerk jobs, one "inspector, production, plastic parts" job (with a SVP-7 rating), and a countless number of inspector jobs, all at varying SVP and exertion levels. United States Dept. of Labor, DICOT, 4th ed. rev. 1991, Alphabetical Index of Occupational Titles.[5] The ALJ's finding that Plaintiff could do the job as "dowel inspector" is not supported by substantial evidence because the VE testimony indicating the type of inspector job was not transcribed in the administrative record. (Tr. 255.)

---

[5] The ALJ's finding that Plaintiff could do the job as "dowel inspector" is not supported by substantial evidence because the VE testimony indicating the type of inspector job was not transcribed in the administrative record. (Tr. 23, 255.)

At step five, the burden is on the Commissioner to show Plaintiff can engage in other types of substantial gainful activity. The evidence to support the ALJ's step five finding must show specific and realistic job opportunities, including the existence of a significant number of jobs. *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982). The confusion regarding specific job titles, requirements and corresponding numbers of jobs in the national and local economy makes it difficult to evaluate the VE testimony and the availability of jobs suitable for Plaintiff. *DeLorme v. Sullivan*, 924 F.2d 841, 851 (9th Cir. 1991). It is the Government's responsibility to ensure the credibility, completeness, and quality of the opinions expressed by the ALJ's expert and/or the resulting report. *See, e.g., Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). Although the VE testified there were jobs available at a sedentary, unskilled level, it is not clear whether she factored in non-exertional limitations adopted by the ALJ in his final decision. Further, without knowing which specific job was referenced by the VE, it is impossible to determine (1) if it is suitable for Plaintiff's limitations, and (2) if there are a significant number of appropriate jobs in the national and local economy. Because the incomplete VE testimony does not support the ALJ's step five finding with substantial evidence, the matter must be remanded for additional evidence and a new step five determination. On remand, if the VE testimony regarding specific job requirements is inconsistent with DICOT definitions, and there is no other evidence to support a deviation from the DICOT, the reason for the inconsistency must be explained. *Light v. Social Sec. Admin*, 119

F.3d 789, 793-94 (9th Cir. 1997).

**C.    Duty to Develop the Record: Illiteracy**

Plaintiff argues the ALJ should have developed the record regarding her illiteracy. She contends that the Medical Vocational Guidelines would direct a finding of "disabled" if she is determined "illiterate." (Ct. Rec. 18 at 13-14.) Illiteracy is defined as the "inability to read or write." A person who cannot read or write a simple message, instructions or inventory lists is considered illiterate, even if he or she can write her name. Typically, an illiterate person has had little or no formal schooling. 20 C.F.R. § 404.1564(b)(1). An ALJ's duty to develop the record further is triggered only when there is ambiguous or an inadequate record for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 4509-60 (9th Cir 2001).

Here, Plaintiff did not allege illiteracy as a disability in her application or in her testimony. She represented in her Disability Report that she could read and write more than her name. (Tr. 92.) She also wrote, and signed, narrative remarks describing her conditions. (Tr. 101, 109.) Plaintiff testified she was told she has a third-grade reading level. (Tr. 245.) At hearing, she testified she had trouble understanding words in the written driver's license test, but passed it after three times. She also reported she uses a computer to assist her in simple math calculations. (Tr. 245-47, 252.)

Plaintiff cites two cases in support of her argument that she should be considered "functionally illiterate" based on her third-grade reading level. The cases cited are not persuasive. The

claimant in *Skinner v. Secretary of Health and Human Services*, 90 F.2d 447 (6th Cir. 1990), was 50 years old, educated in a one-room school in rural Mississippi, and only completed third grade, although he attended school part-time until age 17. He could not read a newspaper. He had his driver's license test administered to him orally and had never held a job requiring reading or writing skills. *Id*. at 448. The claimant in *Olsen v. Schwieker*, 703 F.2d 751 (3rd Cir. 1983), had completed sixth grade, read at a second-grade level, possessed an IQ of 75, tested at a borderline range of intelligence and was considered mentally retarded. He had past employment as a mover, gravedigger, groundskeeper, trash collector and janitor. *Id*. at 752, 756. Here, Plaintiff testified that she worked as a cashier at Goodwill and quit because they would not give her time off. (Tr. 237.) She reported she was head cashier at Goodwill, a lead worker who supervised six people. (Tr. 94.) There was no indication in the record that she had problems performing her prior work as a cashier, which, according to the VE, is classified as semi-skilled with a SVP-3. (Tr. 254.) She testified she had moved around as a child, and this interfered with her school attendance. (Tr. 246.) There is nothing in the record to suggest she had borderline intelligence or was unable to read or write. The ALJ did not have a duty to develop the record regarding illiteracy.

Plaintiff also argues the ALJ erred when he did not include her reading deficits in the hypothetical. (Ct. Rec. 23 at 8.) As discussed above, the ALJ found Plaintiff was not totally credible, but he did not specifically reject her allegations regarding her reading level. *See Holohan*, 246 F.3d at 1208 (ALJ must specifically

identify rejected testimony and explain what evidence undermines the claimant's credibility). Unrejected testimony is credited as true. *Lester v. Chater* 81 F.3d 821, 831 (9th Cir. 1995). The ALJ's hypothetical included an "unskilled work" restriction. Literacy and the ability to communicate in English have the least significance in the performance of the primary unskilled work functions. 20 C.F.R. Pt. 404, Subpt. P, App 2, § 201.00(h)(4). Therefore, a hypothetical which includes the ability to perform sedentary, unskilled work would factor in a low-level reading ability. Nonetheless, the scope of sedentary work available at the unskilled work level is limited. Non-exertional limitations may further diminish the jobs available. Id. Therefore, on remand, the ALJ must clarify his RFC findings to describe what, if any, non-exertional restrictions are caused by Plaintiff's alleged third grade reading level in combination with her other impairments. At step five, hypothetical questions presented for VE opinions should include limitations caused by Plaintiff's reading ability, as well as all other non-exertional limitations supported by evidence in the record. *Light*, 119 F.3d at 793.

## CONCLUSION

The Commissioner did not meet his burden at step five. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17 )** is **GRANTED** and the matter is remanded to the Commissioner for additional proceedings consistent with the decision above and sentence four of 42 U.S.C. § 405(g);

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 21)** is **DENIED;**

3. Application for attorney's fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **PLAINTIFF** and the file shall be **CLOSED**.

DATED March 12, 2007.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 16